IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROCHELLE CONVERSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV-08-177-L |
| | ) | |
| THE CITY OF OKLAHOMA CITY,[1] | ) | |
| OKLAHOMA CITY PUBLIC SCHOOL | ) | |
| BOARD, AL BASEY, in his official | ) | |
| capacity as a Member of the Oklahoma | ) | |
| City Public School Board and in his | ) | |
| individual capacity, LINDA BROWN, in | ) | |
| her official and individual capacity as | ) | |
| Superintendent of the Oklahoma City | ) | |
| Public Schools, and JOHN Q. PORTER, | ) | |
| in his official and individual capacity as | ) | |
| Superintendent at the Oklahoma City | ) | |
| Public Schools, | ) | |
| | ) | |
| Defendants. | ) | |

# **O R D E R**

Plaintiff has been employed by the Oklahoma City School District ("District")

since 1986.  During the 2006–2007 school year, she was the Executive Director of

Student Performance for the John Marshall Learning Community.  In that position,

she supervised principals at 15 schools, including the New John Marshall High

---

[1]While the City of Oklahoma City is named as a defendant in the caption of the case, there are no substantive allegations against the City in the body of the complaint nor is there any evidence that it was served with summons in this case.  As the time for serving the City has passed and it appears that the City's inclusion in this action was a scrivener's error, the court dismisses this action with respect to the City.  *Compare* the Complaint in this case with that in the companion case, <u>Johnson v. Oklahoma City Pub. Schools Bd. of Educ.</u>, Case No. CIV-O8-76-L (W.D. Okla. filed Jan. 22, 2008).

School.  In May 2007, plaintiff was notified by the District's Interim Superintendent, Linda Brown, that she was being laterally transferred to the position of Executive Director of School and Community Services.  Plaintiff contends this transfer was in retaliation for the exercise of her First Amendment rights and her attempts to assist an African-American student who was being unfairly disciplined.  On February 20, 2008, plaintiff filed this action seeking damages pursuant to 42 U.S.C. §§ 1981 and 1983 and the Equal Pay Act.  In addition to her federal claims, plaintiff asserts a state law claim for intentional infliction of emotional distress.  Plaintiff asserts each claim against the District and three individuals:  Al Basey, a member of the District's Board; Linda Brown, Acting Superintendent for the 2006-2007 school year; and John Q. Porter, who became Superintendent on July 2, 2007.[2]

    This matter is before the court on separate motions for summary judgment presented by the various defendants.  Each defendant argues that plaintiff's speech was not protected by the First Amendment because the speech occurred pursuant to her official duties.  Defendants argue plaintiff's § 1981 claim fails because she cannot demonstrate either causation or that she suffered a materially adverse employment action.  Basey, Brown, and Porter contend they cannot be held liable under the Equal Pay Act, and the District asserts it did not violate the Act.  Finally,

_____

[2]Basey, Brown, and Porter are all sued in both their individual and official capacities.  The official capacity actions are, of course, treated as claims against the District.  *See* Moss v. Kopp, 559 F.3d 1155, 1168 n.13 (10th Cir. 2009).

all defendants argue that plaintiff cannot establish the elements of her intentional infliction claim.

Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©.  Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment.   In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982).   Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party "must set forth *specific* facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). *See also*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.   If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).  In addition, "the plain language of Rule 56© mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The undisputed facts[3] establish that the New John Marshall High School[4] opened for the 2006-2007 school year.  During that school year, Brown was the District's Interim Superintendent and plaintiff's immediate supervisor.  On February 21, 2007, Z.J., an African-American student attending the school, was involved in a fight with another student.  A crowd gathered around the fight, and Oklahoma City Police Officer Willie Edwards, who was assigned to the school, responded to the incident.  When Officer Edwards used pepper spray on the students, the crowd reacted violently.  Plaintiff admits the local news media reported the incident as a riot.

Brown directed plaintiff to investigate the incident.  Deposition of Rochelle Converse, Vol. I at 77.  During her investigation, plaintiff spoke with Officer Edwards, the principal of New John Marshall, and a consultant for the District.  Id. at 60, 77.  Plaintiff concluded that Officer Edwards used excessive force when he used pepper spray on the children and reported her findings to Brown.  Id. at 59; Deposition of Rochelle Converse, Vol. III at 101.  This was not the first time plaintiff had complained about Officer Edwards' performance.  Deposition of Rochelle Converse,

[3]Contrary to LCvR 56.1(c), plaintiff did not specifically controvert the material facts set forth in defendants' motions for summary judgment.  Pursuant to the Court's Local Civil Rules, those facts that are supported by the record and that have not been specifically controverted by plaintiff are therefore "deemed admitted for the purpose of summary judgment".  LCvR 56.1(c).

[4]The school is referred to as "New" John Marshall High School to differentiate it from the original John Marshall High School campus.  When it opened, New John Marshall served students in grades six through nine.  During the 2007-2008 school year, students from Original John Marshall were to transition to the New John Marshall building.

Vol. I at 58.  In addition to voicing her concerns about Officer Edwards to Brown, plaintiff met with Officer Edwards' superior officers to complain about his performance and to provide his supervisor with a "decision matrix".  Id. at 58, 82.  In her Complaint, plaintiff alleges that:

> Interim Superintendent Linda Brown scheduled a meeting for February 26, 2007, in which the school district's representatives would meet with members of the Oklahoma City Police Department, including Chief of Police Bill Citty, regarding discipline for and/or removal of Officer Willie Edwards from the New John Marshall High School.
>
> On Monday, February 26, 2007, Plaintiff appeared at the meeting with Sergeant Willie Edwards, Lieutenant Mercer, Captain Brian Willleford, and Major Neves of the Oklahoma City Police Department.
>
> Prior to the February 26, 2007 meeting, Interim Superintendent Linda Brown notified Plaintiff that Brown and Chief Citty would not appear at the meeting.
>
> Linda Brown then left the site of the meeting, leaving Plaintiff to express her concerns without the support and backing of the Oklahoma City School District.

Complaint at ¶¶ 33-36.  While plaintiff offers no evidentiary support for these allegations, the District, Basey, and Brown admitted in their answers that Brown coordinated "a meeting between officials of the Oklahoma City Police Department and the District" and that the meeting, in fact, occurred.  Answer of Linda Brown, in her Individual Capacity at ¶¶ 33, 34 (Doc. No. 11); Answer of Independent School District No. 89 Oklahoma County, Oklahoma and Albert Basey in his Individual

Capacity at ¶¶ 34, 35 (Doc. No. 13).   The fact of the meeting and Brown's involvement in arranging the meeting are therefore taken as true for purposes of ruling on the motions for summary judgment.

As a result of the February 21, 2007 incident, Z.J. and the other student who was involved in the fight were suspended from school.   Shortly after the incident, Z.J.'s parents visited plaintiff to complain about the use of pepper spray on their child.   Deposition of Rochelle Converse, Vol. I at 76.   Plaintiff informed them that the incident would be investigated and the District would take appropriate action.   Id.   At this visit the parents did not complain about Z.J.'s suspension from school.   Id. Although Z.J.'s suspension was to last for the remainder of the semester, he was readmitted to New John Marshall at some point prior to May 1, 2007.   Id. at 90-91. On May 1, 2007, Basey sent Brown an e-mail complaining that Z.J. had been readmitted to school.   Exhibit 4 to Defendants' Motion for Summary Judgment.   On May 2, 2007, Brown forwarded Basey's e-mail to plaintiff and two other administrators and asked them to provide a report on what had transpired.   Id.   At a meeting the next day, Brown directed plaintiff to remove Z.J. from New John Marshall.   Deposition of Rochelle Converse, Vol. I at 93.   Later that day, plaintiff took Z.J.'s file to the District's legal counsel and stated, "We're violating this kid's rights. We wouldn't do this if this was a white student."   Id. at 162.   Plaintiff admits this was the first time she ever mentioned Z.J.'s race.   Id.

On May 4, 2007, Brown informed plaintiff that she was going to be reassigned from her position as Executive Director of Student Performance for the John Marshall Learning Community to another position at the District.  Id. at 22-23, 164. Thereafter, plaintiff was laterally transferred to the position of Executive Director of School and Community Services.   She suffered no reduction in pay, job classification, or fringe benefits as a result of the transfer.  Affidavit of Linda Brown at ¶ 30.  Brown referenced the transfer in her evaluation of plaintiff dated May 29, 2007.  Brown noted:

> Dr. Converse has worked tirelessly and spent many hours on site in her Learning Community to incorporate innovative programs, monitor student academic progress, student discipline, and organizational structural changes. However, she has not been successful in fostering positive leadership and accountability of staff and students even though she and her staff have obtained extensive professional development training in strategic planning, academic leadership and operational team development, quality pathways to excellence, OHI, High Performance Model, Student Code of Conduct, Yale Child Study Center School Development Programs, and IB program.
>
> In order for the district to move forward with addressing the problems in the John Marshall Learning Community, there needs to be a change in leadership; therefore, Dr. Converse will be administratively transferred to the lateral position of Executive Director of School and Community Relations effective June 18, 2007.  The transfer will not result in a change in her current job classification, salary or benefits.

Exhibit 7 to Defendant John Q. Porter's Motion for Summary Judgment and Brief in Support.

Plaintiff's replacement as Executive Director of Student Performance for the John Marshall Learning Community was Terry Brown, a Caucasian male. Before Terry Brown began work, the District moved the Executive Directors, including Terry Brown and plaintiff, to Salary Schedule 503. The new salary schedule "contained a broader range of salaries in order to be competitive in the marketplace, and to allow for salary increases for the position of Principal (a position on a different Schedule), which was supervised by the Executive Director position." Affidavit of Dr. Michael Shanahan at ¶ 4. Terry Brown was employed at step 9 of Schedule 503, with an annual salary of $103,000, while plaintiff's annual salary for the 2007-2008 school year was $99,504.00.[5] At the same time Terry Brown was employed, the District hired Cedric Gray to serve as both Executive Director of Student Performance for the Douglass Learning Community and Principal of Douglass High School. Gray was employed at step 2 of Schedule 503 with an annual salary of $89,200.00. Affidavit of Dr. Michael Shanahan at ¶ 7. Terry Brown and Gray were employed only from July 2, 2007 until July 20, 2007, when both resigned. Their positions were subsequently filled by two women, both of whom were placed at step 1 of Schedule 503 and therefore received an annual salary of $87,000.00. Id. at ¶

---

[5]Although defendants claim that plaintiff "moved from step 14 of Schedule 505 to Step 1 on Schedule 503", this salary does not correspond with any step on Schedule 503 and is $12,504.00 higher than step 1 on Schedule 503. Defendants' Motion for Summary Judgment at 6, ¶ 18; Exhibit 8 to Defendants' Motion for Summary Judgment. The court need not resolve this discrepancy for purposes of ruling on the motions for summary judgment.

8.  For at least one of the women, the salary represented an increase in pay.  <u>Id.</u> at ¶ 8.

Plaintiff claims defendants retaliated against her for exercising her First Amendment rights to complain about Officer Edwards and the removal of Z.J. from New John Marshall on May 3, 2007.[6]  She also contends her defense of Z.J. led defendants to retaliate against her in violation of 42 U.S.C. § 1981.  Her Equal Pay Act claim is based on the higher salary given to Terry Brown for the 18 days he was employed by the District.[7]  Plaintiff claims she suffered emotional distress due to defendants' actions and therefore seeks damages for intentional infliction of emotional distress.  Defendants seek summary judgment on each of plaintiff's claims.

Analysis of plaintiff's First Amendment claim begins with the test first enunciated in <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563 (1968), as modified by the Court in <u>Garcetti v. Ceballos</u>, 547 U.S. 410 (2006).  Under this test, the court must

---

[6]Plaintiff does not contend that Z.J.'s initial suspension was discriminatory; she only questions his removal in May, which she contends was done "because he was poor and black." Deposition of Rochelle Converse, Vol. I at 90-91.

[7]In her complaint, plaintiff also alleges an Equal Pay Act violation based on the salary paid to Gray.  The evidence presented, however, establishes that plaintiff received a higher annual salary than Gray.  His salary therefore provides no support for her Equal Pay Act Claim.  Likewise, plaintiff does not support this claim based on the District's hiring of Donnie Claxton.  In her response to defendants' motion for summary judgment, plaintiff asserts the District hired Claxton as Executive Director of Communications and Public Relations and paid him more than plaintiff. Plaintiff also claims that although she assumed Claxton's duties when he left the District, she did not receive additional compensation.  Plaintiff, however, offers no evidentiary support for these allegations.

first determine whether plaintiff's speech was constitutionally protected.  Thomas v.

City of Blanchard, 548 F.3d 1317, 1322-23 (10th Cir. 2008).

> *Pickering* and the cases decided in its wake identify two
> inquiries to guide interpretation of the constitutional
> protections accorded to public employee speech.  The first
> requires determining whether the employee spoke as a
> citizen on a matter of public concern.  If the answer is no,
> the employee has no First Amendment cause of action
> based on his or her employer's reaction to the speech.  If
> the answer is yes, then the possibility of a First
> Amendment claim arises.  The question becomes whether
> the relevant government entity had an adequate
> justification for treating the employee differently from any
> other member of the general public.  This consideration
> reflects the importance of the relationship between the
> speaker's expressions and employment.  A government
> entity has broader discretion to restrict speech when it
> acts in its role as employer, but the restrictions it imposes
> must be directed at speech that has some potential to
> affect the entity's operations.

Garcetti, 547 U.S. at 418 (citations omitted).  The Court held the controlling factor

is whether the speech at issue was made pursuant to the employee's duties, for

"when public employees make statements pursuant to their official duties, the

employees are not speaking as citizens for First Amendment purposes, and the

Constitution does not insulate their communications from employer discipline."  Id.

at 421.  That the speech occurred during work hours or concerned the subject matter

of the employee's work is not determinative.  Thomas, 548 F.3d at 1323.  "Rather,

it is whether the speech was made pursuant to the employee's job duties or, in other

words, whether the speech was 'commissioned' by the employer. . . .  [T]hat inquiry

[is] 'a practical one,' and . . . a court cannot simply read off an employee's duties from a job description because 'formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform.'" Id. (*quoting* Garcetti, 547 U.S. at 424-25).  Whether a public employee has spoken as a citizen or pursuant to official duties is a question of law for the court.  Hesse v. Town of Jackson, 541 F.3d 1240, 1249 (10th Cir. 2008).

With this standard in mind, the court has examined each expression identified by plaintiff as giving rise to her First Amendment claim.  Plaintiff asserts defendants retaliated against her for voicing complaints about two matters:  Officer Edwards' treatment of children at New John Marshall and Z.J.'s suspension in May 2007, which plaintiff believed violated his due process rights.  It is undisputed that plaintiff's speech on these matters occurred during working hours; the issue is whether her speech could be considered to have been commissioned by the District.  The court finds it was.

Plaintiff's comments on Officer Edwards were made at a meeting scheduled by her supervisor for the express purpose of discussing Officer Edwards' conduct and what, if any, discipline should be imposed.  That the meeting was held with representatives of the Police Department does not lessen the fact that it was a District-sponsored meeting at which plaintiff represented the District.  Likewise, plaintiff's participation in a meeting with other District executives at which she questioned Officer Edwards' judgment was within the scope of her duties as

11

Executive Director of Student Performance for the John Marshall Learning Community.[8]  According to Brown, whose affidavit was unrefuted, plaintiff's duties as Executive Director included ensuring "that school staff, including contractors, such as campus police officers, facilitate and ensure a safe learning environment for students" and that "school staff, including contractors, such as campus police officers, act appropriately and follow all state and federal laws and regulations as well as district policies when dealing with students."  Affidavit of Linda Brown at ¶¶ 18, 20.  If plaintiff had a concern about Officer Edwards' behavior, it was her duty to inform District executives or the Police Department of those concerns.  Id. at ¶ 21. When she voiced those concerns both internally and externally to Officer Edwards' supervisors, she was not speaking as a citizen, but rather was speaking in her capacity as Executive Director.

Likewise, plaintiff's duties included ensuring that students received their due process rights.  Id. at ¶ 15.  If plaintiff believed a student's right to due process was being violated, it was "her responsibility to notify someone such as the superintendent or legal counsel."  Id. at ¶ 16.  This is precisely what plaintiff did when she notified the District's in-house counsel, "We're violating this kid's rights. We wouldn't do this if this was a white student."  Deposition of Rochelle Converse, Vol. I at 162.  As this speech was made pursuant to the duties she owed her

---

[8]Even if the court were to find this speech was outside of plaintiff's duties, defendants would still be entitled to summary judgment as plaintiff has presented no evidence that any defendant was aware of this aspect of plaintiff's speech.

students and the District, it is not entitled to First Amendment protection.  As the

Supreme Court noted in <u>Garcetti</u>, "[r]estricting speech that owes its existence to a

public employee's professional responsibilities does not infringe any liberties the

employee might have enjoyed as a private citizen." <u>Garcetti</u>, 547 U.S. at 421-22.

Because plaintiff has not identified any speech that is subject to protection, the

court's analysis of her First Amendment claim is at an end.  Defendants are entitled

to summary judgment on this claim.

Defendants are likewise entitled to judgment in their favor on plaintiff's § 1981

claim.  In this claim, plaintiff alleges that she was retaliated against because she

objected to Z.J.'s disparate treatment, which she contends was based on his race.

Plaintiff's § 1981 retaliation claim is analyzed using the three-part test first

enunciated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  *See*

<u>Samoza v. University of Denver</u>, 513 F.3d 1206, 1211-12 (10th Cir. 2008).  Under

the <u>McDonnell Douglas</u> test, plaintiff must first establish a prima facie case of

retaliation, which requires her to establish:

> that (1) she engaged in protected opposition to
> discrimination; (2) a reasonable person would have found
> her employer's subsequent action to be materially
> adverse; and (3) a causal connection exists between her
> protected activity and the employer's action.  As to the
> critical second step here, an employer's actions are
> "materially adverse" if they are "harmful to the point that
> they could well dissuade a reasonable worker from making
> or supporting a charge of discrimination."  This standard
> focuses on the employer's retaliatory action, not the
> underlying discrimination the employee had opposed.  And

> while the standard is sensitive to the particular circumstances of each case, it prescribes an objective inquiry that does not turn on a plaintiff's personal feelings about those circumstances. Each case is "judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."

Semsroth v. City of Wichita, 555 F.3d 1182, 1184 (10th Cir. 2009) (citations omitted).

Based on this standard, plaintiff cannot establish a prima facie case of retaliation because she cannot demonstrate she suffered a materially adverse action.[9]  The undisputed evidence establishes that plaintiff was laterally transferred with no decrease in pay or benefits.  In her response, plaintiff contends the "new position involved no supervisory responsibility, no administrative responsibility, and no budget."  Plaintiff's Response to Defendants' Motion for Summary Judgment at 9.  Plaintiff, however, offered no evidence in support of this bald assertion, and a review of the District's 2007-2008 Program Function Organizational Chart appears to bely the claim that the position involved no supervisory responsibility.  *See* Exhibit 10 to Defendant John Q. Porter's Motion for Summary Judgment and Brief in Support at 10.  Moreover, that plaintiff subjectively viewed the transfer as a demotion is not determinative; based on an objective standard and the evidence before the court, the court cannot find plaintiff's transfer constitutes a materially adverse action.  As plaintiff cannot establish her prima facie case, defendants' motions for summary judgment on this claim are sustained.

---

[9]Moreover, plaintiff has not demonstrated that any defendant was even aware of her remark to the District's in-house attorney.  Thus, plaintiff has also failed to establish causation.

14

Defendants are also entitled to judgment in their favor on plaintiff's state law claim for intentional infliction of emotional distress.

> An action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress. Intentional infliction of emotional distress does not provide redress for every invasion of emotional serenity or every anti-social act, and it does not protect mere hurt feelings, no matter how justified. Liability does not extend "to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The test is whether the alleged tortfeasor's conduct is simply one of those unpleasant examples of human behavior which we all must endure from time to time, or whether it has so totally and completely exceeded the bounds of acceptable social interaction that the law must provide redress. [The Oklahoma Supreme Court] has agreed that the line between the acceptable and the unacceptable should be drawn in accordance with Comment d to § 46 of the Restatement (Second):
>
>> ". . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' . . ."

Miller v. Miller, 956 P.2d 887, 900-01 (Okla. 1998) (footnotes omitted). None of plaintiff's allegations meet this test.

Finally, the court finds plaintiff's Equal Pay Act claim does not survive summary judgment. The court finds that no claim can be made against the

individual defendants because, as with Title VII of the Civil Rights Act of 1964, individual supervisors cannot be held personally liable under the Equal Pay Act.  *See* Haynes v. Williams, 88 F.3d 898, 901 (10th Cir. 1996) (Title VII action).  With respect to the remaining claim against the District, the court finds plaintiff has failed to establish a prima facie violation of the Act because she has not demonstrated she was performing work that was substantially equal to that of the higher paid male Executive Director and was doing so under similar working conditions.  *See* Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1364 (10th Cir. 1997).   In her position as Executive Director of School and Community Services, plaintiff acts as a liaison between the District and members of the public.  Exhibit 13 to Defendants' Motion.  In contrast, Terry Brown's position entailed implementing and coordinating District policies in 15 schools, supervising more than a dozen principals, and developing programs to improve student performance.  Exhibit 14 to Defendants' Motion.  Terry Brown was also responsible for curriculum development for the schools within his area and for recommending program changes for student development.  Id.  His position required interfacing with parents, students, administrators, teachers, and staff on a daily basis, while plaintiff's constituency is more focused and narrow.  Moreover, plaintiff does not dispute the District's assertion that it was necessary to pay Terry Brown more than plaintiff in order to recruit him and to meet or exceed his prior salary.  Consideration of prior salaries is not forbidden by Act as long as it is not

the employer's sole justification for any pay disparity.  *See* <u>Irby v. Bittick</u>, 44 F.3d 949, 955 (11th Cir.1995).

In sum, the court GRANTS Defendants' Motion for Summary Judgment (Doc. No. 43); Defendant Basey's Motion for Summary Judgment (Doc. No. 44); Defendant Linda Brown's Motion for Summary Judgment (Doc. No. 45); and Defendant John Q. Porter's Motion for Summary Judgment (Doc. No. 46). Judgment will issue accordingly.

It is so ordered this 23rd day of July, 2009.

_____

TIM LEONARD
United States District Judge